IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ANTWYN GIBBS,

   Plaintiff,

v.            Case No. 2:20-cv-00867

WEXFORD HEALTH SOURCES,
INC.,
    Defendant.

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending are Plaintiff Antywn Gibbs's complaint, (ECF No. 1); Gibbs's motions to amend and supplement his pleadings, (ECF Nos. 21, 26, 41, 47, 48, 49); his motion for a preliminary injunction, (ECF No. 56); his motion seeking copies of his medical records, (ECF No. 57); and Defendant Wexford Health Sources Inc.'s motion to dismiss. (ECF No. 22). This matter is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for total pretrial management and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 5).

For the reasons set forth below, the undersigned **FINDS** that Gibbs has failed to allege facts in his complaint that state a plausible claim against Defendant Wexford Health Sources, Inc. ("Wexford") and further **FINDS** that the proposed additional pleadings are insufficient to withstand a motion to dismiss, thus rendering the amendments and supplements futile as to Wexford and the proposed additional

1

defendants. As such, the undersigned **RECOMMENDS** that the presiding District Judge **DENY** Gibbs's motions to amend or supplement his pleadings, (ECF Nos. 21, 26, 41, 47, 48, 49); **GRANT** the motion to dismiss the complaint filed by Wexford, (ECF No. 22), and **DENY** the remaining motions, (ECF Nos. 56, 57), as moot.

## I.   Factual and Procedural Background

### A. Complaint (ECF No. 1)

On December 23, 2020, Plaintiff Antwyn Gibbs filed a complaint alleging that his constitutional rights were violated due to the deficient dental care he received at Mount Olive Correctional Complex ("MOCC"). (ECF No. 1). Gibbs asserts that on November 18, 2020, one of his teeth was cracked during an oral surgery procedure and pieces of filling were left in his gums. (*Id*. at 2). Gibbs claims that oral surgery was necessary because the dentist "that pulls the teeth" at MOCC put a filling in Gibbs's tooth even though it was decayed and infected, causing him pain and suffering. He alleges that on December 2, 2020, he put in a sick call for pain in his mouth, which he believed was caused by retained filling fragments that were infecting his gums. Gibbs claims that he was told there were no filling fragments left in his gums, and what he felt in his mouth was bone. (*Id*.). According to Gibbs, he did not believe what he was told and asked to see his X-rays; however, his request was wrongfully denied. Gibbs states that he has been in pain since the procedure and suffers from dizziness related to the infection in his mouth. (*Id*.). He contends that the grievances he has filed about this matter have gone unanswered. (*Id*. at 1–2).

Gibbs asserts that the MOCC dentist who placed the filling in his decayed tooth violated his Eighth Amendment rights and caused him to suffer physical injury and emotional distress. (*Id*. at 3). Gibbs requests injunctive relief as well as money damages,

and seeks a court order requiring Wexford "to stop their physical violence" toward him. (*Id.* at 3–4).

### B.  Motions to Add Defendants (ECF Nos. 21, 26)

In his "Motion to Add to Case," Gibbs seeks to add parties to this action. (ECF No. 21). He names Wexford Health Sources, Wexford Medical Health Sources, Commissioner Betsy C. Jividen, Warden Donnie Ames, John Frame, Josh Ward, and Brandy Ward. (*Id.* at 1). He asserts that he has been participating in the "QOL program" for two years, but that the program may soon be shut down, leaving him "worr[ied] about going back to the Mt. Olive Correctional High facility yard where…killings [and] fights take place." (*Id.*). He is concerned that "Donnie Ames, John Frame, Josh Ward, Brandy Ward in the Wexford Health Sources, [and] Wexford Medical Health Sources have something against [him]," and will retaliate by putting him "on the yard to harm [him] by other inmates." (*Id.* at 3). He says he asked John Frame to have him moved "to Northern" for his safety and was instead moved to "a corner where the [camera] can see the cell" and "is in [a] pod with" racists. (*Id.* at 1). He also alleges that he asked to be seen by a private dentist for his ongoing dental issues. (*Id.*).

Gibbs feels that authorities at MOCC, including several individuals he wishes to name as defendants, "have something against [him]" and are "trying to stop him from going home or perfect his appeal case." (*Id.* at 2). Gibbs accuses the warden of promising to "reject any more grievances [he] send[s] about plaintiff tooth in pain [and] suffering problem." (*Id.*). He fears for his wellbeing and health because MOCC staff are attempting to compel other inmates to go against him. (*Id.*). Gibbs notes that MOCC will not provide him with a reason why the institution's former oral surgeon no longer works there, and he fears for his safety because staff have an "attitude." (*Id.*). He states that he has been

having problems with Wexford Health Sources and had a heated argument with the Director of Medical Care and a nurse who is not named as a party in this action. (*Id.* at 3). He requests that he be moved to another facility. (*Id.*).

In his second motion to add defendants, Gibbs inquires about the status of his first motion and provides factual allegations concerning the proposed defendants. (ECF No. 26 at 1). He claims that he was told he could not see an outside dentist due to safety concerns caused by COVID-19, even though other inmates were allowed to go to such dentists. (*Id.* at 2). He posits that this discrepancy in treatment is motivated by racism because "Ms. Dr Kenny" made racist remarks. (*Id.*). Illustrating his dissatisfaction with MOCC operations, Gibbs asserts that money was withdrawn from his account for a TV that he does not have and reiterates his prior concerns about the "QOL program." (*Id.*). He claims he fainted on camera in the medical unit, but medical staff told him the footage of this incident was damaged. (*Id.*). According to Gibbs, medical staff disputed that he fainted, did not analyze any blood work for him, and incorrectly informed him that infection in his gums was not visible on an X-ray. (*Id.* at 3). He asserts that he was given pills to treat his infection, but he still fears for his safety at the facility. (*Id.* at 3–4).

### C. Defendant Wexford's Motion to Dismiss (ECF No. 22)

On March 25, 2021, Wexford filed a motion to dismiss Gibbs's Complaint and an accompanying memorandum of law. (ECF Nos. 22, 23). Wexford argues that the Complaint should be dismissed because, as a private company, in order for it to be sued under § 1983, Gibbs must identify an official policy or custom of the company that causes a deprivation of his rights. (ECF No. 23 at 4). Because he failed to do so, Wexford argues, this action should be dismissed for failure to state a claim. (*Id.* at 6). Next, Wexford posits that Gibbs does not provide a sufficient factual basis to state a cause of action of deliberate

indifference to medical needs in violation of the Eighth Amendment. (*Id*. at 6–8). Finally, Wexford argues that Gibbs is not entitled to injunctive relief. (*Id*. at 8–11).

### D.  Motion to Amend Complaint (ECF No. 41)

On May 19, 2021, Gibbs filed a motion to add a First Amendment retaliation claim. (ECF No. 41). He claims that, 45 minutes after the May 12, 2021 status conference and motion hearing before the undersigned, he was given an unfamiliar pill along with his regular medications, in violation of the "informed consent" doctrine. (*Id*. at 1). He posits that his First Amendment rights were violated by the warden when the warden told Gibbs that his grievances about his teeth would be rejected and refused to explain why the prison's oral surgeon no longer worked there. (*Id*. at 1–2). He also claims that he was retaliated against for exercising his First Amendment rights, because he was referred for mental health services and placed in quarantine after complaining about tooth pain. (*Id*. at 2–3).

On June 1, 2021, Wexford responded in opposition to Gibbs's motion. (ECF No. 45). Wexford claims that the motion should be denied as futile as Gibbs has failed to exhaust his administrative remedies as to the new claims. (*Id*. at 3–5). In addition, Wexford asserts that the claims are futile because the factual allegations do not state a plausible claim of First Amendment retaliation. (*Id*. at 5–7). Finally, Wexford contends that the motion should be denied because the claims that Gibbs seeks to add are against new parties and are based on entirely different transactions, which do not stem from the same transactions or occurrences alleged in the complaint, as is required by Fed. R. Civ. P. 20 in order to amend or supplement the complaint. (*Id*. at 7–8).

### E.  Motions to Add State Law Claim (ECF Nos. 47, 48)

In his June 4, 2021 motion, Gibbs asks the Court to take jurisdiction over "a state

law malpractice claim … against state prison medical staff." (ECF No. 47 at 1). He also requests that the Court exercise jurisdiction "over the matter of the outside [dentist] Dr [Michael Sokolosky]." (*Id.*). He reiterates his assertion found in other filings that mental health staff were sent to speak to him after he complained about tooth pain. (*Id.*). On June 4, 2021, Gibbs filed a document reporting that he was diagnosed with a nerve injury in his mouth. (ECF No. 48). He wonders which dentist was responsible for the problem, and whether the former dentist at MOCC no longer works at the facility because she injured others as well. (*Id.*). He alludes to another dentist's failure to show him X-rays, and asks the Court again if he may bring state tort claims along with his § 1983 claim. (*Id.*).

### F.  Motion to Amend Complaint (ECF No. 49)

On June 4, 2021, Gibbs filed a proposed Amended Complaint, along with his caveat that the time he was permitted to review prison policy and records was constrained by jail staff. (ECF Nos. 49). In this proposed amendment, Gibbs refers to information gleaned from a review of his medical chart prepared by Wexford, as well as dental policies produced by Wexford. Gibbs quibbles with the accuracy of some of the entries in his medical records; for example, he denies that he "beat [his] chest" as stated by his dentist at some point in the record. He claims that he was put on lockdown for complaining about his tooth and that he was "put on lock" due to COVID-19. (*Id.*). In the Amended Complaint, Gibbs names Wexford as well as "Dr. Kenndy," "Dr. Michael Sokolosky," "Dr. Wise," "Dr. Josh," "Dr. Lye," "Dr. Paul Gainer," "Pamaly Giving," "Jane Doe," "Donald Ames," and "John Frame," each in their "individual[] capacity." (ECF No. 49-1 at 1).

First, Gibbs claims that "Dr. Kenny" violated his Eighth Amendment rights and acted with deliberate indifference when she failed to follow the "D-001 oral care policy"

applicable to his X-rays, emergency treatment, oral surgery, extraction of infected and non-restorable teeth, post operative treatment, restorations fillings [and] appropriate follow up procedures." (*Id*.). Gibbs says Dr. Kenny knew Gibbs had a serious medical need and did not show him his X-ray. (*Id*.). Next, Gibbs asserts that Wexford acted with deliberate indifference by failing to discipline its staff for not following Wexford's policy in his medical treatment. (*Id.* at 2). He contends that the dentists who provided him care did not properly follow policy when they put a filling in his decayed tooth and asserts that it took several months for him to be sent to "Dr Michael [Sokolosky] for surgery" without any follow-up from his first dentist. (*Id*.). Gibbs asserts that "Ms Pamaly" was unaware of his extreme pain, and "Dr Josh" did not know what was wrong with him. (*Id*.). He argues that "Dr Kenndy" acted with deliberate indifference "by saying plaintiff sign a refuse on about 11-18-20 after surgery of crack in hammer tooth to see her" and "by saying that she fill [sic] that she was being comprining [sic] by Plaintiff for asking for his [X-ray] as he is [entitled] to" according to policy, and by delaying his transfer to have his tooth removed. (*Id.* at 3).

Gibbs contends that "Dr. Michael Sokolosky" acted with deliberate indifference by not showing Gibbs his X-ray as policy requires, and Wexford failed to discipline D. Sokolosky. (*Id*.). Gibbs states that he was injured and now suffers from numerous health problems, which he posits is the result of medical malpractice, and he requests pendent jurisdiction. (*Id.* at 4). Gibbs also claims that Dr. Josh and Dr. Lye were deliberately indifferent to his medical needs when they did not render assistance after he fainted in the infirmary and when other staff claimed footage of the incident was damaged. (*Id.* at 4). Gibbs claims that he was not allowed to see a doctor until he took his medication. (*Id.* at 5). He claims "Dr. Paul Gainer" acted with deliberate indifference because the doctor

interpreted an object on Gibbs's X-ray as bone, although his records characterized the object as a "root." (*Id.*). According to Gibbs, "Dr Wise" was deliberately indifferent to his medical treatment when she informed Gibbs that nothing was wrong with his mouth after he complained of symptoms and was later diagnosed with a nerve condition. (*Id.* at 5–6).

Gibbs claims "Ms Pamaly" was deliberately indifferent because she did not give him medical care or order her coworkers to treat him, placed him in a cell where the camera footage was damaged and did not record him passing out, and failed to render emergency treatment to him. (*Id.* at 6). He claims that John Doe, a dental assistant, acted with deliberate indifference "by not [assisting] the proper [dental] care" according to policy. (*Id.*). Gibbs asserts that "Dr. Kenndy," Donald Ames, and John Frame acted with deliberate indifference when they sent mental health services to see Gibbs after he repeatedly expressed concern about his tooth pain. (*Id.* at 7–8). He also says "Captain Clifford" tried to forge Gibbs's signature on a mental health plan. (*Id.* at 8). He surmises that he has been placed in a cell with limited camera coverage because of racial discrimination, and he feels that "Dr. Kenndy" discriminated against him because of his race as he heard her use a "racial word." (*Id.*).

For relief, Gibbs requests that the Court allow him to see a specialist for his pain, as well as damages for pain and suffering. (*Id.* at 9). He also questions why he was not given a copy of "the policy" although it is unclear as to what policy he is referring. (*Id.*).

### G.  Motion for Preliminary Injunction (ECF No. 56)

On June 17, 2021, Gibbs filed a motion seeking action from the Court that would require Wexford to "show cause" as to why a preliminary injunction should not issue. (ECF No. 56). He argues that the Court should enter an order directing Wexford to take him to an "outside oral specialist[] to have piece of tooth removed in a root canal

proceeding." (*Id*. at 1–2). He alleges that he continues to suffer from pain because of filling fragments in his gums, but Defendant Wexford tells him that nothing is wrong. (*Id*. at 2).

### H.  Motion for Copies of Records (ECF No. 57)

On June 25, 2021, Gibbs filed a motion asking the Court to send "Mr. Paul Stobel [sic]" a copy of his medical and dental records, stating that Mr. Strobel agreed to pay the cost of the records. (ECF No. 57). On June 25, 2021, Wexford responded to Gibbs's motion, advising the Court that it complied with the Court's order and additionally provided Gibbs with a copy of his medical records. (ECF No. 59).

## II.   <u>Standard of Review</u>

### A.  Motions for Leave to Amend and Supplement Complaint

While the time frame of his allegations is not always stated, Gibbs seeks to alter his pleadings to include, at least in part, events that took place after he initiated this action. Such claims are supplemental rather than amended pleadings. *See* Fed. R. Civ. P. 15(d). Rule 15(d) provides:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

*Id*. However, the distinction between a motion to supplement and a motion to amend "is of little significance" because "[t]he Court applies identical standards in ruling on a motion to amend or a motion to supplement, with leave to be freely given unless good cause exists." *Ohio Valley Env't Coal. v. U.S. Army Corps of Engineers*, 243 F.R.D. 253, 255–56 (S.D.W. Va. 2007).

Amendments to the complaint are governed by Federal Rule of Civil Procedure 15.

Rule 15(a)(1) addresses amendments as a matter of course, allowing the plaintiff to amend the complaint within twenty-one days after serving it on the defendants, or within twenty-one days after a responsive pleading or motion to dismiss is filed under Rule 12(b),(e), or (f), whichever is earlier. F. R. Civ. P. 15(a)(1). In all other cases—such as the instant case—the plaintiff may only amend the complaint with the opposing party's written consent, or with leave of court. Fed. R. Civ. P. 15(a)(2). Here, the opposing parties do not consent; therefore, an amendment to the complaint requires leave of court. Rule 15(a)(2) provides guidance to the court when considering a motion for leave to amend the complaint. Rule 15(a)(2) directs that the court should "freely give leave" to file an amended complaint "when justice so requires." *See also Laber v. Harvey,* 438 F.3d 404, 426 (4th Cir. 2006) ("This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities.").

Generally, leave to amend should be denied "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). An amendment is futile "if the proposed amended complaint fails to satisfy the requirements of the federal rules." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (quoting *United States ex rel. Fowler v. Caremark RX, LLC,* 496 F.3d 730, 740 (7th Cir. 2007) *overruled on other grounds by Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907 (7th Cir. 2009)). "In determining whether a proposed amendment is futile, a court may consider whether the proposed amendment could withstand a motion to dismiss." *Middlebrooks v. St. Coletta of Greater Wash., Inc.*, No. 1:10CV653, 2010 WL 3522084, at *2 (E.D. Va. Sept. 1, 2010) (citing *Perkins v. United States,* 55. F .3d 910, 917 (4th Cir. 1995)) (affirming denial of plaintiff's motion for leave

to amend her complaint as futile because "the proposed amendments could not withstand a motion to dismiss."); *see also Johnson,* 785 F.2d at 510 (holding that a motion for leave to amend should be denied "when the proposed amendment is clearly insufficient or frivolous on its face.") (citing *Davis v. Piper Aircraft Corp*., 615 F.2d 606, 613 (4th Cir. 1980); *Jones v. N.Y. Div. of Military & Naval Affairs,* 166 F.3d 45, 55 (2d Cir. 1999) (finding that amendments subject to "immediate dismissal" for failure to state a claim are "futile" and should not be allowed).

### B.  Motion to Dismiss

Defendant Wexford requests that Gibbs's complaint be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion under Rule 12(b)(6) tests the sufficiency of the complaint. *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007) (stating to survive a 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face"). The Court may consider the motion and briefings, as well exhibits attached to the complaint and documents explicitly incorporated by reference. Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Goines v. Valley Cmty. Servs. Bd*., 822 F.3d 159, 165–66 (4th Cir. 2016) (stating that the Court's review is generally limited to a review of the allegations of the complaint itself, but the Court also considers documents that are explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits).

In this case, the undersigned conducted a status conference and hearing on the pending motion to dismiss. Gibbs was permitted to expound on his claims and argue in opposition to dismissal. Gibbs was also notified of his right to file a supplemental written response to the dispositive motion. At the hearing, Gibbs pointed out that Wexford's

motion to dismiss was based in large part on the argument that Gibbs had not identified any policy or custom of Wexford that was unconstitutional. Gibbs rightfully complained that he was unable to effectively respond to the motion to dismiss without first seeing the relevant Wexford policies. Given that so much of Gibbs's complaint, his proposed amendments, and his various motions concerned his dental treatment and Wexford's dental care policies, the Court ordered Wexford to file Gibbs's medical chart and the relevant policies under seal. Wexford was also ordered to make these documents available to Gibbs for his review, so that he could rely on them in responding further to the motion to dismiss. In fairness to Gibbs, the parties were advised at the status conference that Wexford's policies would be considered in ruling on the motion to dismiss, and Gibbs—in particular—was given considerable leeway to present all materials that he felt were pertinent to his claims against Wexford.

Wexford complied with the Court's order, noting on May 26, 2021 that Gibbs had been permitted to review the materials and that they were being filed under seal. (ECF Nos. 43, 43-1). Gibbs filed a declaration on May 29, 2021, stating that he did not have sufficient time to analyze all of the records at his first review; however, Wexford remedied that problem by providing Gibbs with a copy of his medical records on June 1, 2021. (ECF Nos. 46, 59). After reviewing the medical records and relevant policies, Gibbs filed six declarations, two affidavits, two supplemental memoranda, additional documentation, and several motions asking for additional relief. (ECF Nos. 44, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 58, 60, 63, 64). Gibbs did not challenge the authenticity of his medical records or the policies, and he relied on them, in part, in mounting an opposition to Wexford's motion. Gibbs also supplied copies of his grievances in response to Wexford's contention that Gibbs failed to exhaust administrative remedies. (ECF No. 26-1).

Accordingly, in considering the motion to dismiss, the undersigned considered Wexford's dental policies and the grievances submitted by Gibbs as they are integral to the complaint and the motion to dismiss. *Caner v. Autry*, 16 F. Supp.3d 689, 699 (W.D. Va. 2014) ("[W]ithout risking conversion of the proceedings, courts can consider documents attached to the complaint, as well as those attached to a motion to dismiss, so long as they are integral to the complaint and authentic, including documents incorporated into the complaint.") (quoting *Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation,* 532 Fed. Appx. 332, 334 (4th Cir. 2013) (internal quotation marks and markings omitted).

The undersigned notes that, in addition to materials integral to the complaint, Gibbs has filed documentation—such as affidavits and declarations—that are not at all relevant to Wexford's motion to dismiss, but are offered in support of Gibbs's motions to amend his complaint and for injunction. It merits mentioning that Gibbs's motions to amend do not include additional claims against Wexford itself. Instead, Gibbs attempts to add new defendants and new claims, some of which are related to his dental care and some of which have no connection to the original complaint. Bearing in mind Gibbs's *pro se* status, the importance of the documents to his motions to amend and to the continued viability of this action, and to further the goals of judicial efficiency and justice, the undersigned has considered the "other" documentation, as well as Gibbs's medical records, but only for the purpose of determining whether leave should be granted to Gibbs to amend his complaint. Accordingly, the motion to dismiss need not be converted to a motion for summary judgment.

In resolving the motion to dismiss, the Court must assume that well-pleaded facts alleged in the complaint are true and will draw all reasonable inferences in Plaintiff's favor

as the nonmoving party. *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). "Furthermore, when as here, a Rule 12(b)(6) motion is testing the sufficiency of a civil rights complaint, 'we must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged.*'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (quoting *Harrison v. United States Postal Serv.,* 840 F.2d 1149, 1152 (4th Cir. 1988)).

While the Court "take[s] the facts in the light most favorable to the plaintiff, ... [the Court] need not accept the legal conclusions drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). A complaint fails to state a claim when, accepting the plaintiff's well-pleaded allegations as true and drawing all reasonable inferences, the complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A pleading that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do" and a complaint will not "suffice if it tenders naked assertions devoid of further factual enhancements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

Court are required to liberally construe *pro se* complaints. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v.*

*E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). The Court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

### C.  Pleading and Plausibility

Federal Rule of Civil Procedure 8 requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This mandate "does not require 'detailed factual allegations' but 'it demands more than an unadorned, the–defendant–unlawfully–harmed–me accusation.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Under the provisions of 28 U.S.C. § 1915(e), when an individual seeks to prosecute a complaint without prepayment of fees and costs, the court must screen the pleading and dismiss it, or any part of it, if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant "who is immune from such relief." 28 U.S.C. § 1915(e). A "frivolous" case has been defined as one which is based upon an indisputably meritless legal theory, *Anders v. California*, 386 U.S. 738, 744 (1967), or lacks "an arguable basis either in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989); *Denton v. Hernandez,* 504 U.S. 25, 31 (1992). Likewise, a complaint fails to state a compensable claim, and therefore should be dismissed, when viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that

is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court of the United States ("Supreme Court") further clarified the "plausibility" standard in *Iqbal,* stating that the court is required to accept as true the factual allegations asserted in a complaint, but is not required to accept the legitimacy of legal conclusions that are "couched as ... factual allegation[s]." *Iqbal* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)).

## III.    Discussion

### A.  Motions to Amend and Supplement Complaint

As stated, Gibbs seeks to supplement and amend his complaint by adding multiple new defendants and a variety of new claims. Besides his original claim that his Eighth Amendment rights were violated by the inadequacy of his dental care, Gibbs submits in his various filings the following claims and assertions:

- Warden Donnie Ames promised to "reject" any grievances about his tooth pain, (ECF No. 21 at 2);

- The QOL program may be ending, and Gibbs is concerned that he will be returned to the "yard" where violence occurs; he believes the staff is against him and they will encourage other inmates to harm him. (ECF No. 21 at 1-3);

- Gibbs was subject to discrimination when his request to see an outside dentist was refused on the basis of COVID-19 concerns, although other inmates were allowed to go to outside dentists, and when the dentist at MOCC make racist remarks, (ECF

16

No. 26 at 2);

- Medical staff improperly disputed that Gibbs fainted and could not produce video footage of the alleged incident, declined to take and analyze blood work for him, and claimed that his gum infection would not be visible on X-rays, (*Id.* at 3–4);

- Gibbs was subjected to retaliation for filing his lawsuit and exercising his First Amendment rights. The acts of retaliation include (1) offering him a pill without first providing him with medical counseling, (2) the Warden's refusal to explain why the former dentist at MOCC no longer worked at the facility, and (3) referring him for mental health treatment in response to his repeated complaints about his dental pain, (ECF No. 41 at 1–3);

- MOCC medical staff and Dr. Michael Sokolosky engaged in malpractice, which caused Gibbs to suffer a nerve injury, (ECF Nos. 47, 48);

- Gibbs's Eighth Amendment rights were violated when a MOCC dentist and Dr. Sokolosky refused to show him his X-rays upon request, (ECF No. 49 at 1–2);

- Gibbs's Eighth Amendment rights were violated by Wexford's refusal to discipline its staff for failing to follow policy, (*Id.* at 2);

- Gibbs's Eighth Amendment rights were violated because "Ms Pamaly" and "Dr Josh" were unaware of his complaints of pain; "Dr Kenndy" falsely claimed on a form that Gibbs refused treatment; "Dr. Paul Gainer" referred to an object on Gibbs's X-ray as a bone when other records call the object a root; and "Dr Wise" told Gibbs that nothing was wrong with him, (*Id.* at 2–6);

- "Ms Pamaly" violated Gibbs's Eighth Amendment rights by not rendering emergency medical care to him when he fainted in the infirmary, (*Id.* at 6);

17

- A dental assistant, "John Doe," violated Gibbs's Eighth Amendment rights by assisting in the improper dental care, (ECF No. 49 at 6);

- "Dr Kenndy," Warden Donald Ames, and John Frame violated Gibbs's constitutional rights by referring mental health services to him simply because he complained of persistent dental pain, (*Id.* at 7–8);

- Gibbs's placement in a cell with limited camera coverage constituted racial discrimination, as did "Dr Kenndy's" use of a "racial word." (*Id.* at 8).

Wexford opposes the inclusion of the First Amendment retaliation claims. It argues that doing so would be futile because Gibbs did not exhaust his administrative remedies; the facts alleged are insufficient to state a claim; and the events complained of do not stem from the same transaction or occurrence as those outlined in the original complaint. (ECF No. 45 at 3–8). For the reasons set forth below, it is clear that granting Gibbs's motions as to *any* of his claims would be futile.

### 1. *Exhaustion of administrative remedies*

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust administrative remedies prior to filing a complaint in federal court. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Porter v. Nussle,* 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. All available remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.")

(citations and internal quotation marks omitted). The purpose of the exhaustion requirement is twofold: first, "exhaustion protects administrative agency authority" by giving an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court ... and it discourages disregard of the agency's procedures;" second, "exhaustion promotes efficiency," as claims "generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court" and sometimes "claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court." *Woodford v. Ngo*, 548 U.S. 81, 89, (2006) (citations and internal quotation marks omitted). Further, "even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *Id.*

In *Ross v. Blake*, the Supreme Court held that prisoners are required to exhaust all administrative remedies except those that are "unavailable." *Ross*, 136 S. Ct. 1850 (2016). The Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide relief to aggrieved inmates." *Id.* Second, an administrative process is likewise unavailable when it is "so opaque" that "no ordinary prisoner can discern or navigate it." *Id.* Finally, an inmate need not exhaust administrative remedies when prison officials thwart the inmate's access to the grievance procedure "through machination, misrepresentation, or intimidation." *Id.* at 1860. "[S]uch interference with an inmate's pursuit of relief renders the administrative process

unavailable." *Id.*

Gibbs complains of events that occurred while he was incarcerated in a West Virginia correctional facility. Consequently, he is also required to exhaust his administrative remedies in accordance with the West Virginia Prisoner Litigation Reform Act, W. Va. Code § 25-1A-1, *et seq.*, before filing a federal lawsuit. Even if West Virginia law provides exceptions to the state's exhaustion requirement that are not offered under the PLRA, the federal exhaustion requirements govern this action. Therefore, Gibbs must have exhausted the state's administrative remedies unless they were unavailable to him. *Freeland v. Ballard*, No. 2:14-CV-29445, 2017 WL 337997, at *3 (S.D.W. Va. Jan. 23, 2017) (collecting cases).

In West Virginia, the administrative remedy procedure of an inmate's place of confinement governs the exhaustion process. *White v. Haines*, 618 S.E.2d 423, 431 (W. Va. 2005) ("[B]efore an inmate may bring a civil action challenging the conditions of his/her confinement, he/she must first exhaust the administrative remedies provided by the correctional facility *in which he/she is housed.*") (emphasis added). At the relevant time, exhaustion of administrative remedies in regard to claims involving the conditions of confinement at a state correctional facility required a "final decision from the Commissioner of Corrections or the Commissioner's designee, or the Executive Director of the Regional Jail Authority, or the Director's designee." W. Va. Code Ann. § 25-1A-2. In this case, Gibbs is housed at MOCC, a DOC operated correctional center. At all relevant times, the DOC's Policy Directive 335.00 established procedures whereby state inmates may seek review of complaints which relate to any aspect of their imprisonment. To complete the internal grievance procedures, the inmate must first submit a G-1 Grievance Form to the Unit Manager. If the Unit Manager's response is unfavorable, the inmate may

appeal within five days to the Warden/Administrator by filing a G-2 Grievance Form. If the Warden/Administrator's response is unfavorable, the inmate may make a final appeal to the Commissioner/designee of the Division of Corrections. The administrative remedy process must be completed within 60 days. *See Sullivan v. King,* No. CV 3:17-02347, 2018 WL 651815, at *5 (S.D.W. Va. Jan. 8, 2018), *report and recommendation adopted*, No. CV 3:17-2347, 2018 WL 650217 (S.D.W. Va. Jan. 31, 2018).

Here, Gibbs has provided the Court with copies of the grievances he filed, including those pertinent to the issues raised in the complaint and proposed amended complaint. (ECF Nos. 20-1, 26-1). The grievances demonstrate that Gibbs raised numerous issues regarding pain in his mouth and related dental care; access to his x-rays; the need for laboratory work; his desire to see a private dentist; problems related to his habeas proceeding; alleged tampering with his food; lack of recreation; interference with attorney telephone calls; the need for pain medication; and his application to proceed *in forma pauperis* in this action. (ECF Nos. 20-1, 26-1). However, as Wexford points out, Gibbs filed with the Court the proposed supplements to his complaint well before he could have exhausted his administrative remedies pertaining to the proposed new claims and defendants. (ECF No. 45 at 5).

For example, the events giving rise to his First Amendment retaliation claim allegedly occurred on or after May 12, 2021, yet Gibbs filed the associated motion to amend a mere seven days later, on May 19. (ECF No. 41 at 1). Accordingly, he could not have exhausted his administrative remedies for his claims of First Amendment retaliation prior to filing his proposed pleading. Similarly, Gibbs has not provided any grievances reflecting complaints about racial discrimination, nor has he confirmed in any document that he has exhausted his discrimination claims. Therefore, the undersigned **FINDS** that

21

Gibbs's First Amendment retaliation claims and racial discrimination claims would be unlikely to survive a motion to dismiss; thus, their inclusion in the instant action is futile.[1]

As for Gibbs's other proposed claims, it is not readily apparent that he has exhausted these claims either. Along with one of his motions, Gibbs attached a flurry of grievances marked with dates beginning in Fall 2020 and continuing through 2021 in which he sought, *inter alia*, access to his X-rays, additional medical treatment, and blood work, many of which included the prison's initial response. (ECF No. 26-1 at 1–30). However, Gibbs does not provide evidence that he completed the administrative remedy process with all of these various grievances by appealing them to the Commissioner in the manner described above, and many of the grievances were filed only days or weeks before Gibbs filed his motion to add the claims, implying that full exhaustion would have been unlikely, if not impossible. Of relevance to this matter, Gibbs claims that Warden Donnie Ames promised to "reject" any future grievances about his tooth pain and attaches a letter purportedly from the Warden explaining as much. (ECF Nos. 21 at 2, 26-1 at 14). Nevertheless, although it appears Gibbs asserts that the outcome of his grievances related to this matter are predetermined at the institutional level, there has been no indication that the appellate process provided under West Virginia law would likewise necessarily yield an adverse result for Gibbs. While he claims in his initial Complaint that he never received a response from the Commissioner in his attempt to exhaust his remedies as to his tooth pain, (ECF No. 1 at 2), it is not clear from the record that remedies are unavailable.

---

[1] The undersigned notes that Gibbs has filed numerous statements in support of the complaint, which do not reference or pertain to the original claim in the complaint, but instead, discuss day-to-day problems that he encounters at MOCC. Essentially, Gibbs is now skipping the grievance procedure altogether and is replacing it with direct complaints to the Court.

The record strongly suggests that Gibbs did not exhaust administrative remedies as to other proposed claims; however, at this early stage of litigation, neither party has had an opportunity to fully develop and produce evidence determinative of the exhaustion issue. Based on the limited record before the Court and Gibbs's vague claims that he has exhausted his remedies related to his dental care, it would be premature to rule that the remaining proposed pleadings related to dental care would be futile on this basis. *See Custis v. Davis*, 851 F.3d 358, 361–62 (4th Cir. 2017) (discussing that it is a rare, exceptional instance where administrative exhaustion is apparent on the complaint's face and noting that the inmate's statement that he attempted to exhaust his administrative remedies "may equally imply that he attempted, but could not, exhaust his administrative remedies—and thus, that he exhausted all remedies that were available to him."); *see also Spradlin v. Rodes*, No. 3:16-CV-06986, 2017 WL 4277150, at *3 (S.D.W. Va. Aug. 31, 2017), *report and recommendation adopted,* No. CV 3:16-6986, 2017 WL 4248849 (S.D.W. Va. Sept. 25, 2017) (same); *White v. Van Duncan*, No. 1:10-cv-014, 2010 WL 2813492, at *2 (W.D.N.C. July 15, 2010) (finding that, based on the limited record and viewing the allegations in the light most favorable to the plaintiff, the plaintiff attempted to utilize the administrative grievance procedure and his grievances were ignored and it would be improper to dismiss the complaint for failure to exhaust, as the issue could be raised later in a motion for summary judgment); *Brightwell v. Hershberger*, No. CV DKC 11-3278, 2016 WL 5815882, at *2 (D. Md. Oct. 5, 2016) ("The practical availability of remedies is not a pure question of law. As the Supreme Court noted when remanding *Ross v. Blake*, determining whether administrative remedies are truly available requires development of a record of facts and evidence relating to whether the administrative process operated as a dead end, whether it was knowable by an ordinary prisoner, and

whether officials thwarted the effective invocation of the administrative process through threats, game-playing, or misrepresentation.") (citations omitted). Thus, the undersigned **FINDS** that the dental care claims raised in Gibbs's proposed pleading are not clearly futile based on a failure to exhaust his administrative remedies.

However, even if Gibbs has exhausted his administrative remedies as to some or all of his new claims, his motions to amend and supplement his pleadings still must be denied because the new allegations fail to state plausible claims for relief and would be futile. Discussion of the merits of the proposed claims follows.

### 2. *Eighth Amendment claims*

#### i. **Inadequate medical care**

To pursue a § 1983 claim based on the conditions of confinement, Gibbs must demonstrate that each proposed defendant's alleged misconduct rises to the level of a constitutional violation. The Eighth Amendment to the United States Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (*citing Hudson v. Palmer,* 468 U.S. 517, 526–27 (1984)). However, "[p]rison conditions may be 'restrictive and even harsh.'" *Id.* at 833 (*quoting Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)) ("To the extent that [prison] conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."). "The Eighth Amendment does not prohibit cruel and unusual prison conditions; it prohibits cruel and unusual punishments." *Strickler v. Waters,* 989 F.2d 1375, 1381 (4th Cir. 1993). As such, not every uncomfortable condition of confinement is actionable. *Rhodes,* 452 U.S. at 347.

Ultimately, "only those deprivations denying the 'minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter,* 501 U.S. 294, 298 (1991) (quoting *Rhodes,* 452 U.S. at 347).

In order for Gibbs to state a *prima facie* case that his conditions of confinement violated the Eighth Amendment, he must show both (1) the deprivation of a basic human need that was "sufficiently serious," when measured by an objective standard, and (2) that the responsible prison official had a "sufficiently culpable state of mind." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed upon an inmate cannot properly be called 'punishment,' and absent severity, a punishment cannot be called 'cruel and unusual.'" *Iko*, 535 F.3d at 238 (citing *Wilson,* 501 U.S. at 298-300).

To satisfy the objective component, Gibbs must show that the challenged condition caused or constituted an extreme deprivation. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). "[T]o demonstrate such an extreme deprivation, [Plaintiff] must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from [his] exposure to the challenged conditions.'" *Odom v. South Carolina Dept. of Corrections*, 349 F.3d 765, 770 (4th Cir. 2003) (quoting *De'Lonta*, 330 F.3d at 634). To be "serious," the condition must be "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farmer* at 837. "Compelling a showing of significant physical or emotional harm, or a grave risk of such harm, infuses an element of objectivity into the analysis, lest resolution of the seriousness of the deprivation devolve into an

application of the subjective views of the judges deciding the question." *Shakka v. Smith,* 71 F.3d 162, 166 (4th Cir. 1995) (citing *Strickler v. Waters,* 989 F.2d 1375, 1379–80 (4th Cir. 1993)). "The showing necessary to demonstrate that the deprivation of which a prisoner complains is serious enough to constitute cruel and unusual punishment 'varies according to the nature of the alleged constitutional violation.'" *Id.* (quoting *Hudson v. McMillian,* 503 U.S. 1, 5 (1992)).

To fulfill the subjective component, Gibbs must demonstrate a "deliberate indifference" to his health or safety by the defendants. *Farmer*, 511 U.S. at 834. The Supreme Court explained:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. Deliberate indifference is more than mere negligence but less than malice. *Flores v. Stevenson,* Civil Action No. 2:11–cv–01278–TMC–BHH, 2012 WL 2803721 (D.S.C. May 11, 2012) (citing *Williams*, 77 F.3d at 761). Put simply, the proposed defendants had a sufficiently culpable state of mind if they were aware of an excessive risk of harm to Gibbs's health or safety, but were deliberately indifferent to it. *See Wilson*, 501 U.S. at 303. "In other words, the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. North Carolina Dept. of Corrections*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)). To establish that a prison official's actions constitute deliberate indifference to a serious medical need, the treatment must be "so grossly incompetent, inadequate or excessive as to shock the conscience or to be

intolerable to fundamental fairness." *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).

If the requisite subjective knowledge is established, an official may still avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. An inmate is not entitled to unqualified access to health care, and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the inmate. *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir. 1977). A mere difference of opinion about whether medical care is needed is usually insufficient to maintain a valid cause of action. *Id.* at 48 (citing *Russell v. Sheffer,* 528 F.2d 318, 319 (4th Cir. 1975)); *see also Lopez v. Green*, PJM-09-1942, 2012 WL 1999868, at *2-3 (D. Md. June 4, 2012) (noting that "[a] prisoner's disagreement with medical providers about the proper course of treatment does not establish an Eighth Amendment violation absent exceptional circumstances") (citing *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977).

Based on these legal standards, none of Gibbs's proposed medical claims rise to the level of an Eighth Amendment violation. Gibbs asserts that medical staff at MOCC disputed that he fainted and could not produce video footage of the alleged incident, declined to take and analyze blood work for him, and claimed that his gum infection would not be visible on X-rays. (ECF No. 26 at 3–4). He maintains that a MOCC dentist and Dr. Sokolosky refused to show him X-rays when he asked, and "Ms Pamaly" and "Dr Josh" were seemingly unaware of his pain symptoms while "Dr. Paul Gainer" interpreted a finding on his X-ray differently than a previous doctor had, and "Dr Wise" expressed belief that nothing was wrong with Gibbs. (ECF No. 49 at 1–6). "Ms Pamaly" allegedly did not render care for him when he fainted in the prison infirmary, and dental assistant

"John Doe" violated Gibbs's rights by participating in the supposedly improper dental care. (*Id.* at 6).

With respect to Gibbs's accusations concerning the alleged incident when he fainted in the infirmary, Gibbs does not include any factual allegations indicating that he suffered serious harm, or was in grave risk of such harm, as a result of his condition. He identifies no medical need of his that was left unmet by the conduct of MOCC staff, and, given that the incident took place in a medical unit where he claims he was being monitored for dizziness and fainting, clearly any danger to him was limited. Thus, as pled, Gibbs's fainting spell did not give rise to a medical need "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d 225, 241; *see also Ervin v. Wexford*, No. CV ELH-16-3964, 2018 WL 690872, at *17 (D. Md. Feb. 1, 2018) (finding no deliberate indifference where plaintiff's "mysterious fainting spells" had "never been witnessed by a third party"). Moreover, even assuming that Gibbs had a sufficiently serious medical need, the allegations against the staff of MOCC and Wexford do not suggest deliberate indifference. While Gibbs and the medical staff disagreed about whether he actually fainted, such disagreement serves only to rebut Gibbs's claim. The Eighth Amendment is implicated only when prison staff *know* of a serious risk to inmate health and safety and then disregard it; here, where Gibbs alleges the medical staff denied he fainted, they obviously did not have knowledge of a medical need. Even if medical staff were incorrect in their assessment, "[t]o show an Eighth Amendment violation, it is not enough that an official *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (emphasis in original).

28

Similarly, Gibbs's assertions that medical staff refused to allow him to see his X-rays, did not perform blood work, were unaware of his pain symptoms, and misidentified a finding on his X-ray do not allow for a conclusion that medical staff was aware of and disregarded a serious risk to his health. Gibbs has not alleged that it was medically necessary for him to personally see his X-rays or be assessed with blood work, and he has not identified any risk to his health or safety that would have been mitigated by such action on the part of medical staff. "On the contrary, courts have repeatedly rejected Eighth Amendment claims stemming from allegations that medical practitioners failed to provide diagnostic tests—even in cases where such tests might have proved highly beneficial to the prisoner-plaintiffs or where failure to provide such tests may have constituted medical malpractice." *Gardner v. United States*, 184 F. Supp. 3d 175, 186–87 (D. Md. 2016). *See also Estelle v. Gamble*, 429 U.S. 97, 107 (1976) ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."); *Barnes v. Wilson*, 110 F.Supp.3d 624, 632 (D.Md.2015) ("There is no Eighth Amendment violation where diagnostic tests are declined based on medical assessments of the patient."); *Smith v. Mathis*, Civ. No. PJM 08–3302, 2012 WL 253438, at *5 (D. Md. Jan. 26, 2012) ("[Plaintiff] complains that Defendants should have conducted diagnostic tests and sent him to a specialist or to a surgical consultation given the symptoms he described. His argument, however, goes to Defendants' medical judgment, not their deliberate indifference."), *aff'd*, 475 Fed. Appx. 860 (4th Cir.2012) (per curiam); *Zackery v. Mesrobian*, 299 Fed. Appx. 598, 601 (7th Cir.2008) (affirming summary judgment to physician in spite of physician's misdiagnosis and his rejection of specialist's

recommendation for diagnostic testing that might have identified injury years earlier).

Gibbs's health care records further support the conclusion that Gibbs cannot demonstrate deliberate indifference on the part of the medical and dental providers. The medical records show that Wexford's dentist, Dr. Jean Kennedy, referred Gibbs in March 2020 to a private oral surgeon, Dr. Michael Sokolosky, Jr., for extraction of two teeth. (ECF No. 43-1 at 61, 63). The referral was made because Gibbs continued to have pain in a tooth that Dr. Kennedy filled and also had severe decay in an abutting tooth that Dr. Kennedy could not repair. (*Id.* at 63, 66). The extractions occurred on November 18, 2020, without complication. (*Id.*). The record indicates that the eight-month delay between Dr. Kennedy's referral and the extraction of Gibbs's teeth was due to the refusal of oral surgeons to schedule Gibbs for surgery. (*Id.* at 29). This is consistent with Gibbs's recollection that he was not provided treatment by an outside specialist due to COVID-19 restrictions. However, nothing in the record indicates that the delay caused injury to Gibbs; to the contrary, the record reflects that Gibbs was given analgesics during this time and that he was hoarding them, rather than taking them. (*Id.* at 37).

Gibbs saw Dr. Sokolosky again on December 17, 2020 for follow-up, and had a second procedure performed to remove an exposed thin bone sequestrum in the extraction area. (*Id.* at 50). Later in December 2020, Gibbs complained that he was experiencing vertigo since having his teeth extracted. (*Id.* at 70). He was treated with Ibuprofen. Between December 2020 and May 2021, Gibbs made numerous requests for care related to his jaw pain, and he received care in response to his complaints. (ECF No. 43-1 at 1-73). The dental staff performed x-rays and provided penicillin, despite the fact that Gibbs's examinations did not show signs or symptoms of infection. (*Id.* at 4-6). The medical staff concurrently prescribed Gibbs Ibuprofen and Acetaminophen to treat his

pain complaints, although most of their notes reflect normal healing. (ECF No. 43-1 at 4, 68-70). At the time the records were supplied to Gibbs and the Court, the dental staff was evaluating Gibbs for continued pain in the left side of his face, and decided to start Gibbs on a medication to treat possible trigeminal neuralgia. (ECF No. 43-1 at 4). In toto, these records demonstrate that Wexford's staff was not deliberately indifferent to Gibbs's complaints regarding his dental concerns.

Furthermore, as already discussed, lack of knowledge of a serious medical need categorically cannot support a finding of deliberate indifference, and therefore staff's alleged unawareness of Gibbs's symptoms, misidentification of a finding on his X-rays, and failure to diagnose a nerve disorder earlier in its course do not implicate Gibbs's Eighth Amendment rights. Accordingly, the undersigned **FINDS** that Gibbs's proposed pleadings do not plausibly state a claim that staff of MOCC and Wexford were deliberately indifferent to a serious medical need in violation of the Eighth Amendment and inclusion of such claim would be futile.

### ii. Defendant Wexford's failure to discipline staff

Gibbs also argues that his Eighth Amendment rights were violated when Wexford refused to discipline its staff for their failure to follow Wexford's dental policies. (ECF No. 49 at 2). Some courts in the Fourth Circuit and elsewhere disagree about the applicability of § 1983 to the actions of a private company such as Wexford. *See Riddick v. Watson*, 503 F. Supp. 3d 399, 415 (E.D. Va. 2020) (acknowledging the disagreement among courts and collecting cases). However, it is not necessary to address this issue because Gibbs does not state a plausible claim of supervisory liability under § 1983, or a claim that Wexford implemented an unconstitutional policy.

The law is well settled that "[t]here is no respondeat superior liability under §

1983." *Johnson v. Potomac Highlands Reg'l Jail*, No. CIV.A. 5:06CV1, 2007 WL 1258879, at *2 (N.D.W. Va. Apr. 30, 2007) (citing *Monell,* 436 U.S. at 691). In other words, "§ 1983 does not permit a state official to be held liable solely because one of his or her employees committed a tort." *Oliver v. Powell*, 250 F. Supp. 2d 593, 598 (E.D. Va. 2002) (citing *Monell, supra*). Nevertheless, a supervisor may be held liable under § 1983 in certain circumstances. First, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Johnson*, 2007 WL 1258879, at *2 (citing *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir. 1997)). Second, "when a supervisor is not personally involved in the alleged wrongdoing, he may be liable under § 1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible." *Id*. (citing *Fisher v. Washington Metropolitan Area Transit Authority,* 690 F.2d 1113 (4th Cir. 1982)). Third, "a supervisor may be liable under § 1983 if the following elements are established: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Id*. (citing *Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir.1994)). A plaintiff "cannot satisfy this burden of proof by pointing to a *single incident or isolated incidents*." *Oliver*, 250 F. Supp. 2d at 599. Rather, "supervisory liability may only be imposed where 'there is a history of widespread abuse.'" *Id*. (quoting *Wellington V. Daniels,* 717 F.2d 932, 936 (4th Cir. 1980)). Gibbs has not provided factual allegations that satisfy any of the criteria necessary to state a claim of supervisory liability.

To the extent Gibbs argues that the Wexford dentist was a supervisor, he has failed to show that the dentist violated his constitutional rights. Similarly, Gibbs has not shown that employees of Wexford acted pursuant to an unconstitutional policy that resulted in injury to Gibbs. To the contrary, Gibbs contends that the employees did not follow Wexford's policy. Gibbs states that the employees violated Wexford's Policy No. D-001, which was produced by Wexford in support of its motion to dismiss. (ECF No. 43-2 at 3-5). Although the policy does not provide step-by-step instructions for Wexford's staff to follow, Gibbs essentially claims that they violated the policy by not providing the treatment to him that he believes should have been provided. Gibbs has not claimed or shown knowledge on the part of any Wexford supervisor that employees were engaged in behavior posing a pervasive and unreasonable risk of constitutional injury to inmates. A review of the documents supplied by Gibbs as part of his proposed amended or supplemental pleadings demonstrates that Gibbs received dental care from Wexford, was allowed to examine his own x-rays and records, and was treated for complaints of pain. Gibbs's belief that his care was not rendered quickly enough, or was not the care that he believed he should have, does not rise to the level of a constitutional violation.

If Gibbs's claim is that Wexford has an official policy or custom whereby it fails to discipline staff for violations of its internal policies, in accord with the above analysis of Gibbs's proposed claims and discussion below concerning the motion to dismiss, Gibbs has failed to allege facts sufficient to establish that failure to discipline has resulted in any deprivation of a federally protected right. Wexford cannot be liable for inadequate supervision under § 1983 where there is no causal connection between an official policy of deficiency and a violation of Gibbs's civil rights. Accordingly, the undersigned **FINDS** that Gibbs's allegations are insufficient to state a claim that Wexford violated his Eighth

Amendment rights by failing to discipline its employees, and inclusion of this claim would be futile.

### iii. QOL and failure to protect claims

Gibbs seeks to amend his complaint to add a claim concerning the potential termination of MOCC's Quality of Life Program and the possibility that if he is returned to the "yard," he will be targeted and harmed by other inmates. As these claims are based on events that have not occurred, are without factual support, and are speculative at best, the undersigned **FINDS** that Gibbs fails to state a plausible claim that could withstand a motion to dismiss. Therefore, inclusion of this claim would be futile.

### 3. *First Amendment retaliation claims*

Gibbs asserts that he was subject to retaliation for exercising his First Amendment rights. According to Gibbs, retaliation occurred when (1) he was offered a pill without prior counseling by a physician; (2) the Warden refused to explain why the former dentist at MOCC no longer worked at the facility, and (3) he was referred for mental health treatment simply because he complained of persistent pain in his mouth. (ECF No. 41 at 1–3).

"It is well settled that state officials may not retaliate against an inmate for exercising his constitutional rights." *Ebersole v. Conover*, No. 7:08CV00503, 2010 WL 3629581, at *10 (W.D. Va. Aug. 27, 2010), *report and recommendation adopted*, No. 7:08CV00503, 2010 WL 3585833 (W.D. Va. Sept. 13, 2010) (citing *Am. Civil Liberties Union v. Wicomico Cnty*, 999 F.2d 780, 785 (4th Cir. 1993)). However, "bare assertions of retaliation do not establish a claim of constitutional dimension." *Boblett v. Angelone*, 942 F. Supp. 251, 254 (W.D. Va. 1996), *aff'd*, 121 F.3d 697 (4th Cir. 1997) (citing *Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994)). Generally in this Circuit, inmates' claims of retaliation

are "treated with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams*, 40 F.3d at 74). Therefore, to state a *prima facie* case of retaliation, Gibbs must present concrete facts corroborating the claim.

Both statutory and common law provide prison officials with broad discretion over an inmate's "location, variations of daily routines, changes in conditions of confinement (including administrative segregation), and the denial of privileges." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991); *see also* W. Va. Code § 25-1-1, *et seq*. A change in the location or condition of a prisoner's confinement that does not exceed the scope of the original sentence gives rise to a constitutional claim only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995); *also Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994) ("The federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement ... is within the sentence imposed ... and is not otherwise violative of the Constitution.'") (citation omitted). Evidence that an inmate was fired from a prison job or was denied other inmate privileges in retaliation for her exercise of First Amendment rights, however, is sufficient to support a plausible claim under § 1983. *Patel v. Moron*, 897 F. Supp. 2d 389, 400 (E.D.N.C. 2012) (citing *Hudspeth v. Figgins,* 584 F.2d 1345, 1348 (4th Cir. 1978).

While prisoners have no constitutional entitlement to or due process interest in accessing a grievance procedure, prisoners do have a right to be free from retaliation for filing grievances and complaints. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 542 (4th

Cir. 2017). "Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable [under § 1983] because retaliatory actions may tend to chill individuals' exercise of constitutional rights." *Am. Civil Liberties Union v. Wicomico Cty*., 999 F.2d 780, 785 (4th Cir. 1993) (citing *Perry v. Sindermann,* 408 U.S. 593, 597 (1972). "[T]o state a colorable retaliation claim under Section 1983, a plaintiff 'must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct.'" *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (quoting *Constantine v. Rectors & Visitors of George Mason Univ*., 411 F.3d 474, 499 (4th Cir. 2005)). A plaintiff suffers adverse action "if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of [the protected] rights." *Id.* at 250. To establish a causal connection, "a plaintiff in a retaliation case must show, at the very least, that the defendant was aware of [him] engaging in protected activity." *Constantine v. Rectors & Visitors of George Mason Univ*., 411 F.3d 474, 501 (4th Cir. 2005).

Wexford concedes that Gibbs's lawsuit represents protected speech; however, Wexford argues that Gibbs does not satisfy the second and third elements required to state a claim for First Amendment retaliation, because Gibbs fails to show that any supposedly retaliatory action affected his rights, or that a causal connection exists between the protected speech and adverse action. (ECF No. 45 at 6–7). Wexford is correct. Aside from Gibbs's self-serving conclusion that the acts he complains of were retaliatory, nothing in the record indicates that any adverse action was taken against him because of his lawsuits or grievances. As Wexford notes, Gibbs does not allege that the pill offered to him was in any way deleterious, nor does he contend that he was compelled to take it

against his will. Gibbs likewise has not alleged that the Warden's refusal to explain why the former MOCC dentist was no longer employed at the facility affected him or his rights.

The same is true of his last example of retaliation, when he says prison staff sent mental health services to his cell after he repeatedly complained of tooth pain. While Gibbs may have preferred not to speak with a mental health professional, he provides no evidence that this visit caused him any harm. It is clear that none of these innocuous events would have deterred or impacted a person "of ordinary firmness" in his exercise of his First Amendment Rights. *Martin*, 858 F.3d at 249. However, even if the actions were in some way adverse, Gibbs has provided no facts that tend to support a finding that the MOCC staff acted in retaliation for Gibbs's lawsuits or other protected speech. He presents only "bare assertions," speculation, and factually unsupported conclusions in his filings, which do not suffice as a basis for a claim of First Amendment retaliation and do not provide evidence of a causal connection between the actions and his protected speech. *Boblett*, 942 F. Supp. at 254.

The undersigned accordingly **FINDS** that Gibbs's proposed pleadings fail to state a plausible claim of First Amendment retaliation, and further **FINDS** that Gibbs's request to supplement his complaint on that basis should be denied as futile, both for his failure to state a plausible claim and for lack of exhaustion.

### 4. *Racial discrimination*

Gibbs asserts that he was the target of racial discrimination when his request to see an outside dentist was refused on the basis of COVID-19 concerns while other inmates were allowed to go to outside dentists. (ECF No. 26 at 2). Additionally, he believes that he was discriminated against on the basis of his race when he was placed in a cell with limited camera coverage. (ECF No. 49 at 8). The sole reason Gibbs provides for his suspicion that

these actions were racially motivated were that he overheard the dentist at MOCC and/or "Dr Kenndy" make a racist remark. (ECF Nos. 26 at 2, 49 at 8). Construing Gibbs's pleadings liberally, he alleges that he was denied equal protection of the laws in violation of the Fourteenth Amendment.

The Equal Protection Clause provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV., § 1. The Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (internal quotation marks omitted). To succeed on an equal protection claim, Gibbs must demonstrate that he has been treated differently from others with whom he is similarly situated and then prove that the unequal treatment "was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001); *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002). Ordinarily, a state regulation or policy will be presumed to be valid and will be sustained if the classification is rationally related to a legitimate state interest. *See City of Cleburne*, 473 U.S. at 440.

Of relevance to this case, "[t]aunting comments and slurs by [prison officials] are unprofessional and reprehensible, but do not in and of themselves support a claim of constitutional violation." *Johnson v. Robinette*, No. CV GJH-17-3401, 2019 WL 1331310, at *4 (D. Md. Mar. 22, 2019); *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) ("However, acts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment.") (citing *Collins v. Cundy,* 603 F.2d 825, 827 (10th Cir. 1979)). According to established law, the verbal abuse of inmates by correctional facility staff, without more, is not actionable under § 1983. *See Tokley v. Ratliff*, No. CIV A 707CV00109, 2007 WL 1046955, at *1 (W.D. Va. Apr. 3, 2007)

(citing *Morrison v. Martin*, 755 F. Supp. 683, 687 (E.D.N.C. 1990)); *also Rahn v. Barksdale,* No. 7:11-cv-00563, 2011 WL 6131076, at *2 (W.D. Va. Dec. 8, 2011) (holding that "[v]erbal harassment or idle threats to an inmate, even to an extent that it causes an inmate fear or emotional anxiety" do not amount to constitutional violations.); *Owens v. Vanmeter*, No. CIV.A. RWT-09-1780, 2010 WL 817315, at *3, n. 5 (D. Md. Mar. 4, 2010) ("The use of racist epithets, while offensive, is not actionable under 42 U.S.C. § 1983.") (collecting cases); *Keyes v. City of Albany*, 594 F. Supp. 1147, 1155 (N.D.N.Y. 1984) ("[T]he use of vile and abusive language, no matter how abhorrent or reprehensible, cannot form the basis for a § 1983 claim."); *Burdos v. Canino*, 641 F. Supp. 2d 443, 455 (E.D. Pa. 2009) ("[T]hreats and offensive language do not constitute an actionable adverse action under § 1983."); *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002) (holding that verbal taunts and abuse do not give rise to liability under § 1983); *and Haywood v. Gifford*, No. 1:17-CV-398, 2017 WL 5633316, at *4 (S.D. Ohio Oct. 4, 2017), *report and recommendation adopted*, No. 1:17-CV-398, 2017 WL 5598167, at *4 (S.D. Ohio Nov. 21, 2017) ("[I]t is well-settled that '[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief.'") (citing *Wingo v. Tennessee Dep't of Corp.*, 499 F. App'x 453, 455 (6th Cir. 2012)).

In 2017, the Fourth Circuit reversed a district court's dismissal of a § 1983 complaint which included a claim that inmates in a state prison were subject to discrimination based on race. *Roudabush v. Milano*, 714 Fed. Appx. 208 (4th Cir. 2017). In *Roudabush*, the plaintiff alleged widespread racial discrimination at the prison, claiming that black prisoners were given preferential treatment over white and Hispanic inmates in several important aspects of prison life, including being provided with

different food options, more advantageous trustee positions, and better recreation time assignments with prisoners of their choice. *Id.* at 209–10. Roudabush provided specific examples of the alleged racial disparity in his complaint, which the Fourth Circuit found were sufficient to "allege that the denial of privileges to white inmates, including Roudabush, were [sic] racially motivated." *Id.* at 210.

By contrast, Gibbs's proposed pleadings fall woefully short of the showing required to "nudge [his equal protection claim] across the line from conceivable to plausible." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim asserting racial discrimination requires more than simply showing that the plaintiff belongs to a racial minority; rather, factual allegations tying the unequal treatment to membership in the disfavored race are necessary. Gibbs makes no factual allegations concerning the race of any inmates he believes were given better treatment than him. He does not assert that the prisoners who were allowed to visit outside dentists or who had optimal camera coverage in their cells were of a different race than him, nor does he allege that prisoners of his own race consistently received different treatment than others. He does not provide any specific examples. He has supplied no information whatsoever to support a conclusion that he was treated differently from any other similarly situated prisoner, let alone a finding that such treatment was based on his race. Gibbs's speculation that his cell placement and the level of dental treatment he received was racially motivated, without more, is insufficient to state a claim that he was denied equal protection of the law in this case. *See Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552, 557 (E.D. Va. 2006) (dismissing equal protection claim when plaintiff failed to provide any information that would suggest that prison officials treated inmates differently based on race); *Daye v. Rubenstein*, 417 F. App'x 317, 319 (4th Cir. 2011)

(finding that dismissal was improper when plaintiff provided specific allegations of white and Black inmates receiving differential treatment); *Chapman v. Smith*, No. 3:18CV597, 2020 WL 5742538, at *5 (E.D. Va. Sept. 24, 2020), *reconsideration denied*, No. 3:18CV597, 2021 WL 816910 (E.D. Va. Mar. 3, 2021) (dismissing an equal protection claim when the plaintiff "offered nothing, aside from his own speculation and subjective beliefs, to indicate that any decision made by [the defendant] was motivated by race in any way, shape, or form, much less that she harbored any animosity towards him because [of his race]"); *Salinas v. Dillman*, No. CIV.A. 7:08CV00268, 2008 WL 1743865, at *3 (W.D. Va. Apr. 15, 2008) (dismissing claim when the plaintiff failed to "suggest[] any way that his constitutional rights have been violated owing to racial animus").

In a recent declaration in support of his complaint, Gibbs states that a "white gang member" on punitive segregation received "store call," but Gibbs has not received any food products since he was place in punitive segregation. (ECF No. 64). He also mentions that a white inmate was moved to a different pod because his toilet was not working properly, but when Gibbs asked to move to another cell because a light over his toilet and sink was broken, he was told "not at this time." (*Id.* at 64). Without more, these allegations do not state a plausible claim of racial discrimination. Gibbs must show that he is similarly situated with the comparison inmates, which he does not do. Other than the fact that Gibbs is black and the other two inmates are white, Gibbs offers no factual basis upon which the Court can conclude that the two other inmates were valid comparators, and that the perceived differences in treatment were related to Gibbs's race. Based on the allegations stated by Gibbs, it is just as likely that other legitimate reasons account for the differences in treatment; for example, that no other cell was available at the time Gibbs requested to be moved, or that he did not receive food items because of a particular

sanction Gibbs received that the white inmate did not.

Accordingly, as Gibbs fails to provide factual allegations sufficient to state a claim for a violation of his right to equal protection, the undersigned **FINDS** that his motion to amend or supplement his complaint to add this claim should be denied as futile, both for his failure to state a plausible claim and for his lack of exhaustion.

### 5. *Malpractice Claims*

In addition to his proposed claims of constitutional violations, Gibbs seeks to include claims for malpractice against the medical professionals responsible for the nerve damage resulting from his supposedly inadequate dental care. (ECF Nos. 47, 48). As will be discussed further below, because the undersigned recommends that all the claims over which this Court has original jurisdiction be dismissed, any remaining state law claims would be subject to dismissal as well. 28 U.S.C. § 1367(c)(3). Malpractice is not cognizable under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). At this stage in the litigation, no prejudice or inconvenience would result to either party by denying Gibbs's motion to include state law malpractice claims and allowing him to pursue his claims in an appropriate state court venue. *See Culp v. Alewine*, No. CA 5:13-1342-JFA-KDW, 2013 WL 4499387, at *4 (D.S.C. Aug. 20, 2013); *but see Coppage v. Mann*, 906 F. Supp. 1025, 1046–47 (E.D. Va. 1995) (retaining jurisdiction over state law malpractice claims despite dismissal of all federal constitutional claims because parties had already completed discovery and were ready to proceed to trial) ("In a sense, we are at least in the seventh inning in this contest and in these circumstances there is little to be gained by declining to adjudicate the state claims."); *Henderson v. Va.*, No. CIV A 7:06CV00408, 2007 WL

2781722, at n.26 (W.D. Va. Sept. 21, 2007), *aff'd sub nom. Henderson v. Virginia*, 272 F. App'x 264 (4th Cir. 2008) (declining to exercise supplemental jurisdiction over a state law malpractice claim and citing § 1367). In the absence of subject matter jurisdiction, Gibbs cannot bring claims in federal court. Should the presiding District Judge adopt the recommendation to dismiss the complaint against Wexford and deny the proposed amendments, Gibbs will have no basis to claim federal subject matter jurisdiction. Thus, the undersigned **FINDS** that Gibbs's motions as to his state law claims should be denied. In so doing, the undersigned does not express any opinion as to the merit of these claims.

Based on the foregoing, the undersigned **FINDS** that all of the additional claims Gibbs seeks to add to his original complaint would be futile, and the respective motions, (ECF Nos. 21, 26, 41, 47, 48, 49), should be **DENIED**.

### B.  Defendant Wexford's Motion to Dismiss

In his Complaint, Gibbs contends that his tooth was cracked during an extraction procedure performed by an oral surgeon in Charleston, and that the extraction was only necessary because a dentist at MOCC improperly filled Gibbs's decayed and infected tooth. (ECF No. 1 at 2). About a month after the extraction, Gibbs complained of pain in his mouth and was told by a nurse at MOCC, presumably an employee of Wexford, that bone was showing through his gum tissues. Gibbs dismissed this statement, believing instead that the so-called bone was actually fragments of filling left behind in his gums after his tooth cracked during extraction. (*Id.*). A dentist declined to allow him to view his X-rays even though Gibbs believes he was entitled to see them. (*Id.*). Gibbs generally complains of the quality of dental care he received.

Wexford moves to dismiss Gibbs's complaint on the basis that Gibbs does not state a plausible claim for relief. (ECF Nos. 22, 23). Wexford argues that, as it is a private

corporation, Gibbs must identify some official custom, policy, or practice of the corporation that gives rise to a violation of his rights. (ECF No. 23 at 4–6). Further, Wexford argues that Gibbs has not set forth a factual predicate demonstrating that his Eighth Amendment rights were violated, as his pleadings are devoid of evidence that the treatment he received was undertaken with deliberate indifference to his medical needs. (*Id.* at 6–8). Finally, Wexford argues that Gibbs is not entitled to a preliminary injunction because his claim does not meet the legal standard for such injunction to issue. (*Id.* at 8–11).

The legal principles governing claims for relief under the Eighth Amendment are set forth more fully in the discussion above concerning Gibbs's motion to add additional claims and defendants. *See supra* § III(A)(2)(i). In order to survive a motion to dismiss, Gibbs must allege a sufficient factual basis to support a conclusion that Wexford acted with deliberate indifference to his serious medical needs. It is well settled that a private entity may, in certain cases, act under color of law within the meaning of § 1983 and therefore be exposed to liability. *See Conner v. Donnelly*, 42 F.3d 220, 223–24 (4th Cir. 1994). Providing medical services to prison inmates qualifies as such action. *Id.* at 224. However, as a private corporation, Wexford is not subject to liability under § 1983 unless Gibbs identifies an official policy or custom of Wexford that caused the deprivation of his rights. *See Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999); *see also Austin v. Paramount Parks, Inc.*, 195 F.3d 715 (4th Cir. 1999) (reversing the district court and holding that private corporation was entitled to judgment as a matter of law when plaintiff did not provide that an official policy or custom gave rise to deprivation of her Eighth Amendment rights). "To state a claim against a private entity a plaintiff must (1) identify a specific policy or custom; (2) show that the policy or custom is fairly attributable to the

44

acts or omissions of the entity or its policy-makers; and (3) allege an affirmative link between the policy and the specific denial of care." *Charette v. Wexford Health Sources, Inc.*, No. CV CCB-19-0033, 2021 WL 1102361, at *4 (D. Md. Mar. 23, 2021) (citing *Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987)).

Wexford is correct that Gibbs's pleadings are devoid of any mention of an official policy or custom which caused the deprivation of his rights. In fact, Gibbs's filings are replete with allegations that Wexford's staff acted *in violation* of Wexford's policies by failing to render proper dental care. At no point in his complaint or elsewhere does Gibbs insinuate that Wexford's official policy or custom is to provide inadequate dental care in the manner he describes. His claim against Wexford necessarily fails for this reason.

Furthermore, Gibbs's complaint does not state a plausible claim that Wexford or any of its employees acted with deliberate indifference to his serious medical needs. Assuming for the sake of argument that Gibbs's medical condition—a decayed tooth that was improperly filled and later required extraction along with ongoing pain and possible infection—was objectively serious, there is no indication that Wexford or any other person acted with deliberate indifference. Gibbs does not claim that Wexford or the "[dentist] lady" that filled his tooth were aware that the tooth was decayed and infected when the tooth was filled, or that placing a filling in a decaying tooth would create an excessive risk to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The standard under the Eighth Amendment is a stringent one; even if the dentist *should have known* that Gibbs's tooth was decayed and filling it was all but sure to result in a risk of serious harm to Gibbs, no Eighth Amendment violation accrues unless she was subjectively aware of the risk and chose to fill the tooth anyway. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). While Gibbs's allegations, if taken as true, may plausibly state a claim for

45

negligence or professional malpractice, his contentions rise nowhere near the level of an Eighth Amendment violation, which requires the plaintiff to show that the defendant's actions were "so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986). *See also Stokes v. Hurdle*, 393 F. Supp. 757, 762 (D. Md. 1975) (holding that a difference of opinion on dental care did not support an Eighth Amendment violation because "even if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention"), *aff'd*, 535 F.2d 1250 (4th Cir. 1976).

Likewise, Gibbs's issues with his post-extraction treatment—his belief that remnants of filling remain in his gums and that he has an infection despite medical providers' opinion to the contrary—do not state a claim of deliberate indifference. What Gibbs describes in his complaint is mere disagreement with a health care provider's assessment of his condition and dissatisfaction with a dentist's refusal to show him X-rays. Even if Wexford's staff were mistaken, "even gravely so," in concluding that Gibbs did not suffer from an infection, the Fourth Circuit has consistently found that "such disagreements ... fall short of showing deliberate indifference." *Jackson*, 775 F.3d at 178–79 ("While a non-cardiologist's erroneous diagnosis of a serious heart condition, as alleged by Jackson, may well represent a deviation from the accepted standard of care, standing alone it is insufficient to clear the "high bar" of a constitutional claim."); *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir.1985); *see United States v. Clawson*, 650 F.3d 530, 538 (4th Cir.2011); *Al-Haqq v. A/W Dean*, No. 217CV00535TMCMGB, 2017 WL 6541330, at *5 (D.S.C. Nov. 29, 2017); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam) ("Questions of medical judgment are not subject to judicial review.");

*Gardner v. United States*, 184 F. Supp. 3d 175, 187 (D. Md. 2016); *Rogers v. Schilling*, No. 5:17-CV-70073, 2019 WL 237404, at *6 (W.D. Va. Jan. 16, 2019), *aff'd sub nom. Rogers v. MacDonald*, 776 F. App'x 189 (4th Cir. 2019).

The accusations contained in the complaint and throughout Gibbs's other filings and pleadings do not provide any support for the conclusion that Wexford or its staff acted in violation of the Eighth Amendment. Therefore, based on the lack of allegations in the complaint implicating Wexford's policies or supervision, the undersigned **FINDS** that Gibbs does not state a plausible claim against Wexford pursuant to § 1983 and further **FINDS** that the motion to dismiss should be granted.

### C. Miscellaneous Motions

The above analysis reveals that Gibbs does not state a plausible claim for relief and none of his proposed amendments and supplements cure the defective quality of his original complaint. As the undersigned recommends that the entire action be dismissed, the remaining motions still pending in this matter should be denied as moot.

Gibbs seeks an order that would require his proposed named defendants to show cause as to why a preliminary injunction requiring him to receive a root canal should not issue. (ECF No. 56). To obtain a preliminary injunction, a court must consider: (1) the plaintiff's irreparable injury if the interim relief is denied, (2) injury to the defendants if an injunction is issued, (3) the plaintiff's likelihood of success on the merits, and (4) the public interest. *Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir.1997). "[A] preliminary injunction is an extraordinary remedy, to be granted only if the moving party clearly establishes entitlement to the relief sought." *Federal Leasing, Inc. v. Underwriters at Lloyd's*, 650 F.2d 495, 499 (4th Cir.1981). "[A]bsent the most extraordinary circumstances, federal courts are not to immerse themselves in the management of state

47

prisons." *Taylor v. Freeman*, 34 F.3d 266, 268 (4th Cir.1994). Further "[t]he harm demonstrated by the plaintiff must be neither remote nor speculative, but actual and imminent." *Manning*, 119 F.3d at 263 (internal quotation marks omitted). *See also Rylee v. Bureau of Prisons*, No. 8:08-CV-1643-PMD-BHH, 2009 WL 252154, at *4 (D.S.C. Feb. 2, 2009) (denying prisoner's motion for a preliminary injunction that would require state prison officials to provide him with cataract surgery). Here, where the underlying action is subject to dismissal for failure to state a claim, issuance of a preliminary injunction is inappropriate and the undersigned **FINDS** that this motion should be denied as moot.

Gibbs also moves the Court to send a copy of his medical records to an attorney, Paul Strobel, a nonparty in this matter whose relationship to the case is unclear. (ECF No. 57). Wexford opposes this motion and notes that it has already provided Gibbs with a copy of the relevant medical records. (ECF No. 59). Given the undersigned's recommendation that the action be dismissed, it is unnecessary to resolve this dispute and the undersigned **FINDS** that the motion should be denied as moot.

## IV. <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned **RECOMMENDS** that the presiding District Judge **DENY** Gibbs's motions to add to his pleadings. (ECF Nos. 21, 26, 41, 47, 48, 49) and further **RECOMMENDS** that the motion to dismiss, (ECF No. 22), be **GRANTED**, and the remaining motions, (ECF Nos. 56, 57) be **DENIED** as moot.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, The parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date

of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Goodwin, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff and counsel of record.

**FILED:** September 14, 2021

Cheryl A. Eifert
United States Magistrate Judge

49